UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL,                          Case No.: 15-10345
     Plaintiff,
v.                                       Stephen J. Murphy, III
                                         United States District Judge

JORG ERICHSEN, *et al*,
     Defendant.                          Stephanie Dawkins Davis
_____/               United States Magistrate Judge

# REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS (Dkt. 100)

## I.     PROCEDURAL HISTORY

Plaintiff Robert Annabel filed the instant action January 26, 2015.  (Dkt. 1).

District Judge Stephen J. Murphy, III referred this case to the undersigned for all

pretrial proceedings, except as to dispositive motions.  (Dkt. 22, 106).  On October

10, 2017, plaintiff filed a motion for sanctions against Attorney Alan J. Soros,[1]

(Dkt. 100), defendants responded (Dkt. 117), plaintiff replied (Dkt. 121).

## II.    ANALYSIS AND RECOMMENDATION

### A.     Jurisdiction

Before discussing plaintiff's motion for sanctions, it is appropriate to address

the scope of this Court's jurisdiction in deciding the matter.  As noted above, Judge

---

[1] Mr. Soros represents the MDOC defendants.  As such, references herein to "defendants" refer only to the MDOC defendants, and not to defendant Erichsen.  Erichsen is not involved in this motion.

Murphy has referred all non-dispositive pretrial matters to the undersigned

pursuant to 28 U.S.C. §636(b)(1)(A), which provides in pertinent part;

> [A] judge may designate a magistrate judge to hear and
> determine any pretrial matter pending before the court,
> except a motion for injunctive relief, for judgment on the
> pleadings, for summary judgment, to dismiss or quash an
> indictment or information made by the defendant, to
> suppress evidence in a criminal case, to dismiss or to
> permit maintenance of a class action, to dismiss for
> failure to state a claim upon which relief can be granted,
> and to involuntarily dismiss an action.

*Id.*

Though not named in the statutory list above, the Sixth Circuit is clear that at

least in the post-judgment context, magistrate judges are not to decide Rule 11

motions for sanctions.  *See Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976

F.2d 995 (6th Cir. 1992); *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir. 1993).

Less clear is the question of whether magistrate judges have the authority to decide

pretrial motions for Rule 11 sanctions.  *See, e.g.*, *Walker v. Warden*, 2015 WL

4430867, at *3 (S.D. Ohio July 17, 2015); *Evans v. Walgreens*, 2011 WL 4436135,

at *1, n. 1 (W.D. Tenn. Aug. 16, 2011); *Amway Corp. v. Procter & Gamble Co.*,

2001 WL 181698, at *11 (W.D. Mich. Apr. 3, 2001).  The fairly broad language of

the court's decision in *Massey* wherein it states:  "[G]uided by Sixth Circuit

precedent, we conclude that motions for sanctions, fees and costs are *not* to

be *determined* by a magistrate judge," would suggest a categorical proscription.  7

F.3d at 509-10 (emphasis in original), *see also Bennett*, 976 F.2d at 998 (holding that an order on Rule 11 sanctions is dispositive of the "claim" for money damages, and therefore the magistrate judge must proceed by way of report and recommendation).

At the same time, the undersigned acknowledges that the rationale for the decisions in both *Massey* and *Bennett* to treat the Rule 11 motions in those cases as dispositive primarily seems to rest upon the post-judgment posture of the motions. *See Bennett*, 967 F.2d at 998, n. 5 ("Although the Rule 11 sanctions in the present case were based on pretrial conduct, . . . the Rule 11 motion was not a pending pretrial matter, because it was not made until after judgment on the underlying claim already had been entered and an appeal taken."); *Massey*, 7 F.3d at 510 ("[T]he magistrate judge in the instant case did not have the authority to rule upon post-dismissal motions for sanctions, fees and costs as requested by the district court."). Nevertheless, the prudential practice that has developed throughout this circuit is to treat motions for Rule 11 sanctions as dispositive in both the pretrial and post-judgment context. *See e.g. Holly v. UPS Supply Chain Solutions, Inc.*, 2015 WL 4776904, at *2-3 (W.D.Ky. Aug. 12, 2015); *Herrarra v. Michigan Department of Corrections*, 2011 WL 3862426, at * 1, n. 1 (E.D. Mich. July 22, 2011); *Evans*, 2011 WL 4436135, at *1, n. 1; *Cramer v. Vitale*, 359 F. Supp. 2d 621, 624 (E.D. Mich. 2005); *Ellipsis, Inc. v. Color Works, Inc.*, 2005 WL

3466566, at * 1 (W.D. Tenn. Dec. 16, 2005); *Amway Corp.*, 2001 WL 181698, at

*11; *Norris v. United States*, 1998 WL 839586, at *1 (E.D. Mich. Oct. 22, 1998).

Consequently, the question appears at best unsettled, and in view of the direction

of the case law within the Sixth Circuit including in this district, in an abundance

of caution, the undersigned will proceed by way of a report and recommendation.

    B.    <u>Analysis</u>

        1.    Parties' Arguments

    Plaintiff brings this motion under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and

the Court's inherent power, and argues that defendants' attorney Alan Soros should

be sanctioned for subornation of perjury and filing false documents.  (Dkt. 100, at

p. 1).  Plaintiff relies on the facts set forth in his prior motion to strike the

defendant's reply supporting their motion for summary judgment (Dkt. 61),[2] and

his reply supporting the motion to strike (Dkt. 66).  Plaintiff argues that the

defendants' reply supporting their motion for summary judgment contained a

"scandalous assertion" that plaintiff failed to exhaust administrative remedies, so

he filed a motion to strike the reply (Dkt. 61).  (*Id.* at p. 3).  Plaintiff asserts that

defendants' response to his prior motion to strike attached false documents and a

false affidavit from non-party Kristopher Steece.  (Dkt. 66, p. 1).  (*Id.*).  In the

---

[2] Defendants' motion for summary judgment and related reply can be found at Dkts. 43 and 60, respectively.

instant motion, plaintiff complains that the Court did not address plaintiff's allegations against Mr. Soros in the Order denying the motion to strike (Dkt. 70) or in the Report and Recommendation on defendants' motion for summary judgment (Dkt. 91).

Plaintiff argues that Mr. Soros' misconduct is a "wilful scheme to deceive." (*Id.*).  Plaintiff details alleged "proofs" of the falsity of the documents in his reply to defendants' response to his motion to strike, but merely lists them in his motion for sanctions:

> a. Plaintiff's date of birth on the document attached to defendants' response to his motion to strike does not match his actual date of birth,
>
> b. Plaintiff signed the original documents but now his signature is missing,
>
> c. Plaintiff's complaint alleged that the release of medical information was to investigate a grievance, but defendant Steece claims it was to investigate a physical assault,
>
> d. Mr. Soros' title heading appears on a copy of an email apparently written by Mr. Steece showing that Soros authored the email, not Steece, and
>
> e. Mr. Soros was the attorney in a prior case involving Mr. Annabel in which those defendants used white-out to change information on original documents.

(*Id.* at p. 4).  Turning to his reply relating to his motion to strike (Dkt. 66), plaintiff explains that Inspector Steece would not have sought a medical release for a three-month old physical assault, as he states.  Rather plaintiff posits that the release was for the purpose of investigating plaintiff's "retaliatory suicide watch grievance."

(Dkt. 66, p. 1).  Further, plaintiff claims that he signed the form found at Dkt. 64, Pg ID 529, but that the form attached to defendants' response brief does not contain plaintiff's signature and his date of birth on the form is wrong.  Regarding the fourth proof, defendants attached to their response (Dkt. 64, Pg ID 528) a February 2014 email, sent before the suit was filed, that contains the header, "Soros, Allan (AG)"  revealing, according to plaintiff, that Soros typed this document and not that Steece sent the email.  (Dkt. 66, pp. 1-2).

According to defendants, the first three "proofs" involve a medical authorization form.  (Dkt. 117, at p. 3).  Defendants respond that, as Steece stated in his affidavit, Steece approached Annabel to get his signature on a medical authorization form, not to investigate a grievance.  (*Id.* at p. 4).  Defendants acknowledge that the medical release form attached to their response to the motion to strike was unsigned because Steece could not locate the signed version.  (*Id.*). Defendants attached the signed version to their response to the instant motion as Exhibit B.  (*Id.*).  They point out that both the signed and unsigned versions contain the same date of birth mistake; both documents are identical and not forged.  (*Id.*).

Regarding plaintiff's fourth proof, the defendants state that Mr. Soros' "title heading" appears on an email from Steece because the printers at the Michigan Office of the Attorney General automatically insert a header bearing the name of

6

the person who printed an email. (*Id.* at p. 5). Mr. Soros did not notice the header

because these headers are printed at the top of these documents daily. However,

defendants contend that the email was sent from Steece and was not fabricated by

Mr. Soros. (*Id.*).

As to plaintiff's fifth proof, defendants note that plaintiff provides no

evidentiary support for the conclusion that they used white-out to change

information on original documents. Mr. Soros contends that he is unaware of any

changed signatures or dates or counterfeit pages. (*Id.*).

In reply, plaintiff finds it "strange" that Mr. Soros is now claiming that

attaching the unsigned version of the medical release form in the first place was a

mistake. (Dkt. 121, p. 1). Plaintiff asserts that it is unlikely that he failed to notice

that his own date of birth was wrong on the medical authorization form when he

signed it, but instead more likely that defendants have acted fraudulently by

submitting "photocopy frauds" of both the signed and unsigned document. (*Id.*).

Plaintiff maintains that Steece sought plaintiff's signature on the medical

authorization form to investigate plaintiff's grievance, not an assault. Plaintiff

contends that it is also strange that Steece would be investigating a three month old

physical assault claim, as defendants state. (*Id.* at p. 2). Plaintiff signed the

document on February 18, 2014, just two weeks before mailing his grievance.

Therefore, according to plaintiff, the timing of the events makes it more likely that

Steece was investigating his grievance.  (*Id.*).  As to the email header issue, plaintiff maintains that the circumstances are suspicious.  Plaintiff finds questionable the assertion that the email would be printed with the header, but other documents from Mr. Soros are not printed with the header.  (*Id.*).

Finally, plaintiff contends that his motion for sanctions is not baseless, as evidenced by defendants' agreement on some points, such as the fact that the date of birth is incorrect and the fact that Mr. Soros' header appears on the copied email.  (*Id.* at p. 3).

2.    Analysis

a.    Rule 11

"[I]n this circuit, the test for the imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances."  *Id.* at 739 (quoting *Mann v. G & G Mfg., Inc*., 900 F.2d 953, 958 (6th Cir. 1990)).  The test for reasonableness under the circumstances is an objective standard.  *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir. 1988).  This objective standard is intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments.  *Nieves v. City of Cleveland*, 153 Fed. Appx. 349, 353 (6th Cir. 2005).

Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule."  *Albright v. Upjohn*,

788 F.2d 1217, 1221 (6th Cir. 1986). A good-faith belief in the merits of a case is

insufficient to avoid Rule 11 sanctions. *Mann*, 900 F.2d at 958. Sanctions are

mandatory in the event that the court determines that Rule 11 has been violated,

but the court has "wide discretion" in delineating the extent of the sanctions

imposed. *Albright*, 788 F.2d at 1222. "The standard for sanctioning parties is the

same as that for counsel: reasonableness under the circumstances per Rule 11, or

'in bad faith, vexatiously, wantonly, or for oppressive reasons' under this Court's

inherent sanctioning power." *Adams v. Penn Line Services, Inc.*, 2009 WL

1514605, *4 (N.D. Ohio 2009). Rule 11(c) provides, "[i]f, after notice and a

reasonable opportunity to respond, the court determines that Rule 11(b) has been

violated, the court may impose an appropriate sanction on any attorney, law firm,

or party that violated the rule or is responsible for the violation." Fed. R. Civ. P.

11(c)(1).

     As an initial matter, plaintiff's motion for Rule 11 sanctions is procedurally

defective. Rule 11 contains a "safe harbor" provision stating that a Rule 11

motion "must not be filed or be presented to the court if the challenged . . . claim . .

. is withdrawn or appropriately corrected within 21 days after service." Fed. R.

Civ. P. 11(c)(2). "[S]anctions under Rule 11 are unavailable unless the motion for

sanctions is served on the opposing party for the full twenty-one day 'safe harbor'

period before it is filed with or presented to the court." *Ridder v. City of*

*Springfield,* 109 F.3d 288, 297 (6th Cir. 1997); *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 510-511 (6th Cir. 2002).

Plaintiff mailed a copy of his motion to defendants on October 4, 2017, (Dkt. 100, Pg ID 807), and filed his motion six days later on October 10, 2017. (Dkt. 100). Because plaintiff did not provide defendants with a 21-day "safe harbor" period, his motion is procedurally improper and thus subject to denial. *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) ("Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion."); *see also* Rule11 Commentary ("Satisfaction of the safe harbor provision is a condition precedent to the court's authority to grant a party's motion for sanctions under Rule 11.").

Moreover, the motion is untimely. It is axiomatic that if plaintiff was required to provide defendants with a 21-day "safe harbor" period in which to withdraw the offending papers, then it must be the case that defendants be afforded an opportunity to withdraw the papers. In *Ridder*, the Sixth Circuit discussed the 1993 amendment to Rule 11 and explained that "[b]y virtue of the fact that under the 1993 amendments, 'a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn,' it follows that a party cannot wait to seek sanctions until after the contention has been judicially disposed." *Id.* at 295 (internal citation omitted); *see also Hunter v. Earthgrains Co. Bakery*, 281

10

F.3d 144, 152 (4th Cir. 2002) ("'safe harbor' provisions of [Rule 11] preclude the serving and filing of any Rule 11 motion after conclusion of the case.").  Advisory Committee notes to Rule 11 state that "because of the mandatory 21-day safe harbor period, parties must file Rule 11 motions before the court rules on the merits.  This is because once the court acts on the paper at issue, the party that filed it no longer has the ability to correct or withdraw it."

Plaintiff's Rule 11 motion is centered on documents attached to defendants' response to plaintiff's motion to strike.  Defendants filed that response on December 12, 2016.  (Dkt. 64).  The undersigned denied the motion to strike in an Order dated March 8, 2017.  (Dkt. 71).  The Court affirmed the Order April 5, 2017.  (Dkt. 74).  Plaintiff filed the pending motion for sanctions on October 10, 2017.  At this point, the Court has ruled on the merits of the underlying motion and defendants do not have the option to withdraw the allegedly offending papers.  Therefore, plaintiff's Rule 11 motion is untimely and should be denied.

b.    28 U.S.C. § 1927

28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under § 1927 are warranted "when an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Oakstone Comm. Sch. v. Williams*, 615 Fed. Appx. 284, 289 (6th Cir. 2015) (citation omitted). Section 1927 requires more than a mere showing of negligence or incompetence, although it does not require a showing of subjective bad faith. *Id.* "We construe 'vexatiously multiplying proceedings' to include conduct where 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims.'" *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). "[A]n attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997).

The undersigned finds that defendants' exhibits attached to the response to the motion to strike fall short of the standard required to grant costs and fees under section 1927. The response to the motion was not an unreasonable multiplication of proceedings, nor did it needlessly obstruct litigation. The undersigned is not persuaded that defendants made any consequential mistake in attaching an unsigned version of the release form containing an inaccurate date of birth, or in submitting an email copy with Soros' header. Moreover, even if any of these

actions were deemed to be mistakes, such mistakes do not demonstrate that Mr.

Soros knew or reasonably should have known "that a claim pursued is frivolous, or

that his litigation tactics will needlessly obstruct the litigation of non-frivolous

claims." *Shepherd*, 313 F.3d at 969 (internal quotation omitted).  Nor do these

facts persuasively undermine the authenticity of the documents.[3]  There is nothing

in the record before the Court to suggest that plaintiff's mistaken birth date was not

on the original form.  Indeed, plaintiff does not even affirmatively assert that the

"real" form accurately recited his birthday.  And defendants have provided a

reasonable explanation, which the undersigned has no reason to doubt, as to how

Mr. Soros' header came to be on the Steece email.

Furthermore, to the extent plaintiff is claiming that defendants' response to

the motion to strike caused him to file this motion for sanctions, which thereby

obstructed the litigation of non-frivolous claims, the argument lacks merit.

Litigation has continued on after plaintiff filed his motion to strike and has not

been needlessly obstructed.  There is no indication that defendants' counsel

attempted to "multiply this litigation vexatiously."  The conduct that plaintiff

argues warrants sanctions under this section is not the type of conduct for which

---

[3] Notably, defendants presented the unsigned medical release form (Dkt. 64-2, Pg ID 529) as an attachment to the Steece email, which instructed the email recipient to obtain plaintiff's signature on the form as part of the investigation into the alleged assault by staff. Thus, in context it is clear that the form was in its pre-execution state, and the absence of plaintiff's signature is not germane to the point for which it was attached.

section 1927 sanctions are typically awarded. *Knopf v. Elite Moving Sys.*, 677 Fed.

Appx. 252, 257 (6th Cir. 2017) ("[S]anctions under 28 U.S.C. § 1927 "require a

showing of something less than subjective bad faith, but something more than

negligence or incompetence."); *see, e.g., Thurmond v. Wayne County Sheriff Dept.*,

564 Fed. Appx. 823, 833-4 (6th Cir. 2014) (imposing § 1927 sanctions where

counsel filed another complaint based on the same occurrences that are the subject

of the action before the court); *Red Carpet Studios Div. of Source Advantage, Ltd.*

*v. Sater*, 465 F.3d 642, 646-47 (6th Cir. 2006) (upholding § 1927 sanctions where

attorney multiplied proceedings by, for example, failing to join a necessary party

and making several attendant misrepresentations, and sending harassing cease and

desist letters on issues that would be resolved through the course of litigation);

*Nollner v. Southern Baptist Convention, Inc.*, 628 Fed. Appx. 944, 950-51 (6th Cir.

2015) (upholding § 1927 sanctions because counsel needlessly and intentionally

caused additional expense to defendants when, after missing a deadline, plaintiff's

counsel file a "patently unsubstantiated request" to convert a Rule 12 motion to a

Rule 56 motion). Therefore, plaintiff's motion for sanctions under 28 U.S.C. §

1927 should be denied.

           c.    Inherent Power

     A court may assess attorney's fees under its inherent powers "when a party

has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,"

*Chambers,* 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted), or when the conduct is "tantamount to bad faith," *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980).  "[I]f a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party." *Chambers*, 501 U.S. at 45-46.  "We apply a three-part test from *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,* 125 F.3d 308, 313 (6th Cir. 1997), to determine whether the district court's imposition of sanctions under the bad faith standard was proper."  *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *BDT Prods., Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 752 (6th Cir. 2010).  "This test requires the district court to find "[1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'"  *Id.* (quoting *BDT Prods.*, 602 F.3d at 752).  In *Chambers*, the defendant and his attorney engaged in a pattern of abuse for over two years through a series of tactics such as refusing to abide by a preliminary injunction, placing property beyond the reach of the plaintiff by selling it to a third party, seeking to render the purchase agreement meaningless, and the attorney was held in contempt of court at least once during the proceedings.  *Chambers*, 501 U.S. at 36-40.  The Supreme Court upheld a sanction of almost $1 million, relying on its inherent power to impose sanctions.

The undersigned perceives no reason to order sanctions against Mr. Soros under this Court's inherent authority.  Plaintiff has not demonstrated that defendants' attorney committed fraud or otherwise acted in a vexatious or wanton manner or in bad faith.  *See Chambers*, 501 U.S. at 45-46.  This Court already rejected plaintiff's similar arguments raised in his reply brief to his motion to strike, which was ultimately denied.  (Dkt. 70).  The documents attached to defendants' response to the motion to strike (Dkt. 64) have not been shown to be fraudulent or intended to deceive the Court, although they may contain some minor errors – not wholly attributable to counsel – that did not affect the outcome of the motion.[4]  *Murray v. City of Columbus, Ohio*, 534 Fed. Appx. 479, 485–86 (6th Cir. 2013) ("Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred.") (citing *Chambers,* 501 U.S. at 44-45); *see also* Dkt. 70, Order denying plaintiff's motion to strike.  Furthermore, plaintiff is not claiming that defendants' claims in their response to the motion to strike were meritless, implicating the bad faith standard.  *See Metz*, 655 F.3d at 489.

---

[4] The inclusion of the wrong birth date on plaintiff's medical release form appears to have occurred at the time the form was generated, and thus cannot be attributed to counsel.  To the extent that the inclusion of Mr. Soros' header on a document purported by Affiant Keece to be "true and accurate copies of original records" may constitute error, it is minor.

16

Therefore, the undersigned sees no rationale for sanctioning defendants' attorney under its inherent powers.

## III.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that plaintiff's motion for sanctions (Dkt. 100) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  June 1, 2018                          s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on June 1, 2018, I electronically field the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record and that I have mailed by United States Postal
Service to the following non-ECF participants: Robert Annabel #414234, Ionia
Maximum Correctional Facility, 1576 W. Bluewater Highway, Ionia, MI 48846
and Jorg Erichsen, 331 Hillcrest Avenue, Grosse Pointe Farms, MI 48236.

                                             s/Tammy Hallwood
                                             Case Manager
                                             (810) 341-7887
                                             tammy_hallwood@mied.uscourts.gov